UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                                       Civil Case No. 26-cv-10384

              Plaintiff,                Honorable

vs.

$181,882.25 seized from
Chase Bank account xxxxx6128;
$2,770.11 seized from Chase Bank
account xxxxx4458;
$91.79 seized from DFCU Financial
account xxxxx9898;
$8,675.00 seized from
Chase Bank account xxxxx2597; and
Miscellaneous Jewelry seized from
Detroit Federal Credit Union,
400 Town Center Drive, Dearborn, Michigan,

              Defendants *in Rem.*

---

## Complaint for Forfeiture

---

Plaintiff, United States of America, by and through its undersigned attorneys, states upon information and belief the following in support of this Complaint for Forfeiture:

### Jurisdiction and Venue

1

1.     This is an *in rem* civil forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(A) and (C) and 18 U.S.C. § 984, resulting from violations of 18 U.S.C. §§ 1956, 1957, and/or 1960.

2.     This Court has original jurisdiction over this proceeding pursuant to 28 U.S.C. § 1345 because this action is being commenced by the United States of America as plaintiff.

3.     This Court has jurisdiction over this forfeiture action under 28 U.S.C. § 1355(b)(1)(A) because acts giving rise to the forfeiture occurred in the Eastern District of Michigan.

4.     Venue is proper before this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the government's claims occurred in the Eastern District of Michigan.

5.     Venue is also proper before this Court under 28 U.S.C. § 1395(b) because the Defendants *in rem* were found and seized in the Eastern District of Michigan.

## Defendants *in rem*

6.     The Defendants *in rem* consist of the following:

   a.   $181,882.25 seized from Chase Bank account xxxxx6128;

   b.   $2,770.11 seized from Chase Bank account xxxxx4458;

   c.   $91.79 seized from DFCU Financial account xxxxx9898;

     d.  $8,675.00 seized from Chase Bank account xxxxx2597; an

     e.  Miscellaneous Jewelry seized from Detroit Federal Credit Union, 400 Town Center Drive, Dearborn, Michigan.

7.    The Defendants *in rem* were seized on September 4, 2025, by Homeland Security Investigations (HSI), U.S. Department of Homeland Security.

**<u>Underlying Criminal Statutes</u>**

8.    Title 18, United States Code, Section 1960 ("Operating an Unlicensed Money Remitting Service") provides that "[w]hoever knowingly conducts, controls, manages, supervises, directs or owns all or part of an unlicensed money transmitting business, shall be fined . . . or imprisoned . . . or both."  18 U.S.C. § 1960(a).

9.    Title 18, United States Code, Section 1960 defines an "unlicensed money transmitting business" as one:

> which affects interstate or foreign commerce in any manner or degree and (A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable; (B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section; or (C) otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity. 18 U.S.C. § 1960(b)(1).

10.    Title 18, United States Code, Section 1960 further defines "money transmitting" to include "transferring funds on behalf of the public by any and all

means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier." 18 U.S.C. § 1960(b)(2).

11.     Under the Money Transmission Services Act, MCL Section 487.1001-1047, the State of Michigan requires a license in order to operate a money transmitting business within the state.

12.     Title 31, United States Code, Section 5330 requires any person who owns or controls a money transmitting business to register that business with the Secretary of the Treasury, through the Financial Crimes Enforcement Network (FinCEN). This registration requirement applies in addition to any State licenses that may be required. 31. U.S.C. § 5330(a)(3).

13.     Title 18, United States Code, Section 1956(a)(1)(B) prohibits conducting a financial transaction involving the proceeds of a "specified unlawful activity" knowing that the transaction is designed in whole or in part to: conceal or disguise the nature, the location, the source, the ownership, or the control of such proceeds; or, to avoid transaction reporting requirements.

14.     Title 18, United States Code, Section 1957 makes it a crime to knowingly engage, or attempt to engage, in a monetary transaction with proceeds of a specified unlawful activity in an amount greater than $10,000 by, through, or to a financial institution.

## **Statutory Basis for Civil Forfeiture**

15.    18 U.S.C. § 981(a)(1)(A) and (C) provide for civil forfeiture of any property, real or personal, involved in or traceable to a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, and/or 1960.

16.    When the property in a civil forfeiture consists of funds deposited in an account at a financial institution, 18 U.S.C. § 984 provides for the civil forfeiture of any identical funds found in the same account as the funds involved in the offense that is the basis for forfeiture.

## **Factual Basis for Civil Forfeiture**

17. Al Rada Ovens (Al Rada Bakery) is a bakery and small grocery store which is open to the public and located on Warren Avenue in Detroit. It is named Al Rada Bakery LLC in its articles of organization filed with the Michigan Department of Licensing and Regulatory Affairs (LARA). Karar Al Bayati is the registered agent listed on the last annual report filed with LARA.

18. A hawala is a network of individuals, *hawaladars*, who use a shared network to facilitate the transfer of money overseas and the receipt of money from overseas. As an example, a customer in the United States would approach a hawaladar looking to send $500 to his brother in Iraq. The hawaladar accepts the $500, plus a fee, and then calls a hawaladar in the desired location and to inform him that he has received $500 for the sender's brother. The sender's brother can then

visit the hawaladar in Iraq and pick up $500, less any fees. Both hawaladars make a note of the transfer in their ledger, though the money never physically crosses borders or enters the regulated banking system.

19. A hawaladar requires access to cash on hand in order to effectuate transfers owed to local customers.

20. Gold may be used as a medium for exchange or payment. Some hawala networks use gold as a cash alternative, a store of value, or a medium to settle outstanding balances.

21. Transactions between business and personal bank accounts or the use of cashier's checks to transfer money back and forth to the same account may be used to conceal the nature, source, location, ownership or control of the funds.

22. Zelle is a money transfer service with many participating banks that allows customers to send and receive money through their electronic devices to another Zelle user. The sender and recipient must have U.S. bank accounts. Participants may include a note about the money transfer in the 'payment memo' section of the app.

23. A review of Zelle records for Al Rada Bakery's Zelle account, from 2022 through spring 2025, shows over 350 outgoing payments. The records also show over 800 incoming payments, totaling over $500,000. Many of the payment memo sections reference hawala transfers, Iraq, and fees for the hawala service.

24. For example, the following Zelle records were reviewed:

a. A June 6, 2024, transfer from W.A. to Al Rada Bakery LLC for $792. The payment memo read "700 iraq 92 hawala." W.A. made eighteen additional transfers to Al Rada Bakery, one of which mentions Iraq: "$900 iraq 200 for u".

b. There were thirty-two incoming payments from M.N. totaling $15,802 to Al Rada Bakery. All but six of the payment memos contained the word "Iraq." Four of the six that did not include "Iraq" included the term "Samawa". Samawah is a city in Iraq.

c. At least ten more transfers had payment memos that contained the word Iraq or a city in Iraq.

25. Chase account xxxxx6128 (Al Rada Chase Account) was opened in the name of Al Rada Bakery LLC. There were over $600,000 in cash withdrawals from this account between April 2022 and July 2025.

26. Thirty-three of the cash withdrawals from the Al Rada Chase Account are between $10,000 and $35,000.

27. There were multiple transfers between the Al Rada Chase Account and the other defendant *in rem* accounts.

a. DCFU Account xxxxx9898, opened by Al Bayati's wife Sarah Ikrabat, received over $25,000 in deposits from the Al Rada Chase Account. A cashiers check totaling over $140,000 was drawn from this account and deposited to the Al Rada Chase Account.

b. Chase Account xxxxx4458, opened by Al Bayati's wife Sarah Ikrabat, received over $75,000 in deposits from the Al Rada Chase Account. The account also had over $45,000 transferred to the Al Rada Chase Account.

c. Chase Account xxxxx2597, opened for a business entity registered to Sarah Ikrabat, received $8,675 via Zelle from Al Rada Bakery. The Zelle account linked to Chase Account xxxxx2597 sent thirteen Zelle transfers and received twenty-eight. Seven of the sent transfers were to Al Rada Bakery and fourteen of the received transfers were from Al Rada Bakery.

d. The Miscellaneous Jewelry was located in a safety deposit box opened by Sarah Ikrabat in 2024 at Detroit Federal Credit Union, the same financial institution as DCFU Account xxxxx9898.

28. Al Rada Bakery, Karar Al Bayati and Sarah Ikrabat were not registered with the Department of Treasury FinCEN database as a money transmitting business as of January 30, 2026.

29. Al Rada Bakery, Karar Al Bayati, and Sarah Ikrabat were not registered with the Michigan Department of Insurance and Financial Services as a money transmitting business as of January 30, 2026.

## **Claim**

30. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs one through 29 above, including all their subparts.

31. Based upon the facts outlined above and the applicable law, the Defendants *in rem* are forfeitable to the United States under 18 U.S.C. § 981(a)(1) and 18

8

U.S.C. § 984 as proceeds of or property involved in operating an unlicensed money transmitting business and/or money laundering.

## Conclusion and Relief

Plaintiff respectfully requests that a warrant for arrest of the defendants *in rem* be issued; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the defendants *in rem* be condemned and forfeited to the United States of America for disposition according to law; and that the United States be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

JEROME F. GORGON, J.R
United States Attorney

*s/Catherine Morris*
Catherine Morris (P84371)
Assistant United States Attorney
211 W. Fort St., Ste. 2001
Detroit, MI 48226
(313) 226-9562
Catherine.morris@usdoj.gov

Dated: February 3, 2026

## **VERIFICATION**

I, Kristopher Mead, am a Special Agent with Homeland Security Investigations.  I have read the foregoing Complaint for Forfeiture and assert under penalty of perjury that the facts contained therein are true to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information that I received from other law enforcement agents and/or officers.

_____
Kristopher Mead, Special Agent
Homeland Security Investigations

Dated: February 3, 2026